# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **THE MANLEY LAW FIRM, LLC** <br> 1555 Lake Shore Drive <br> Columbus, OH 43204 <br><br> and <br><br> **MDK MANAGEMENT COMPANY, INC.** <br> 1555 Lake Shore Drive <br> Columbus, OH 43204 <br><br> Plaintiffs, <br><br> vs. <br><br> **BRENT J. GIBBS** <br> 1808 W. Bearss Avenue <br> Tampa, FL 33613 <br><br> Defendant. | CASE NO. 2:25CV1242 <br><br> JUDGE <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT AND REQUEST FOR SPEEDY HEARING PURSUANT TO FED. R. CIV. P. 57** |

For their Complaint against Defendant Brent J. Gibbs, Plaintiffs The Manley Law Firm, LLC ("The Manley Firm" or "Firm") and MDK Management Company, Inc. ("MDK"), hereby state as follows:

## OVERVIEW OF THE DISPUTE

1. This action arises out of failed 9-month business relationship that necessitated a business divorce to mitigate damages.

2. When Gibbs was hired to lead The Manley Firm's practice group directors and to head the Firm's timeshare practice, he brought no capital, clients, or specialized expertise to the business relationship.

3. Gibbs failed to take an active leadership role, and when faced with mounting pressure to deliver results and provide solutions to business issues, Gibbs masterfully claimed credit for others' work, leading to a complete breakdown of trust and confidence in Gibbs.

4. Gibbs' decisions to share confidential Company information with third-parties outside of the business are inexcusable, incurable, and grounds for immediate expulsion of an equity owner.

5. Following Gibbs' pervasive job performance failures as well as an investigation into Gibbs' potential discriminatory behavior toward co-workers, The Manley Firm and MDK took steps to expel Gibbs as a Member of the Firm and to terminate his employment, respectively.

6. The only dispute for resolution is determining the appropriate value of Gibbs' equity interest in The Manley Firm.

7. Accordingly, The Manley Firm and MDK seek a declaration from this Court affirming the steps that the Firm and MDK took in separating from Gibbs so that the parties can finalize this business divorce.

## THE PARTIES

8. The Manley Law Firm, LLC is an Ohio limited liability company with a principal place of business at 1555 Lake Shore Drive, Columbus, OH 43204.

9. The only member of The Manley Law Firm, LLC is individual Theodore K. Manley, who is a resident of the State of Ohio.

10. MDK Management Company, Inc. is an Ohio corporation with a principal place of business at 1555 Lake Shore Drive, Columbus, OH 43204.  MDK provides management services to The Manley Firm.

11. Brent J. Gibbs is an individual residing in the State of Florida.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over the parties and this dispute pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendant are from different states, so there is complete diversity of

citizenship between the parties, and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

13. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Gibbs is subject to this Court's personal jurisdiction.

14. The Court has personal jurisdiction over Plaintiffs because they transact business in this state.

15. The Court has personal jurisdiction over Gibbs pursuant to the Ohio forum selection clause found in the Operating Agreement, which provides:

> 12.3 Governing Law; Consent to Exclusive Jurisdiction and Venue. The Company, this Agreement and the rights of the Members with respect to the Company and this Agreement shall be governed by the laws of the State of Ohio without regard to its rules concerning conflicts of laws. Any action or proceeding between or among any one or more of the Members or other Unit holders or the Company arising out of or relating in any way to this Agreement **shall be brought only in a state or federal court of competent jurisdiction located in the county of Franklin, State of Ohio, and all objections to personal jurisdiction and venue in any action or proceeding so commenced are hereby expressly waived**.

(Ex. 1, § 12.3 (emphasis added).)

## FACTUAL BACKGROUND

**A. Gibbs executed The Manley Firm Operating Agreement and was hired by MDK.**

16. Prior to forming a business relationship of their own, Gibbs was a client contact for Theodore Manley.

17. In 2023, Gibbs consulted with Manley on a regular basis about his growing disdain for his current employer. Gibbs complained that he was not being recognized for his work, that he was underpaid, and that he had low job satisfaction.

18. In 2023, Gibbs communicated to Manley that he was concerned with job security with his current employer given budget constraints.

19. Upon information and belief, Gibbs' position was eliminated resulting in a severance agreement.

20. Based upon representations that were less than fulsome regarding his ability to contribute value to the business, Manley agreed to provide Gibbs equity in The Manley Law Firm LLC with no money down.

21. On January 1, 2025, Manley and Gibbs entered into the Third Amended and Restated Operating Agreement of The Manley Law Firm LLC (the "Operating Agreement") whereby Gibbs received 30% interest in the Manley Firm, and Manley retained 70% interest. The Operating Agreement is attached as **Exhibit 1**.

22. At or about the same time, Manley transferred to Gibbs, via a Unit Purchase and Option Agreement, a 50% interest in MDK. A copy of the UPOA is attached as **Exhibit 2**.

23. Gibbs did not purchase his interests in The Manley Firm or in MDK nor did he contribute any capital to either company.

24. Instead, the transfer of interests was secured by a $850,000 Promissory Note that provided payments on that Note would be made out of the income of The Manley Firm.

25. Gibbs, a practicing attorney, was hired to lead the Firm's practice group directors across several states as well as to head the firm's timeshare practice.

26. Gibbs was simultaneously employed by MDK, which is an S-Corporation that exists only to provide firm management services to The Manley Firm.

27. At all relevant times, Gibbs was an employee at will with MDK.

**B.    Gibbs failed to perform his job duties and was terminated from MDK and expelled from The Manley Firm.**

28. From the outset, it was apparent that Gibbs lacked the experience and business acumen to perform his role at the Firm and MDK.

29. Between December 2024 and August 2025, Gibbs demonstrated a fundamental lack of leadership abilities and a failure to adapt to Firm policies.

30. Gibbs' performance failures include, but are not limited to:

- Failing to engage with the Senior Leadership Team;
- Failing to propose solutions and action plans;
- Inappropriately taking credit for the work of others;
- Deflecting responsibility;
- Becoming confrontational at work;
- Failing to become a non-resident Ohio title agent (a requirement under Ohio law for title agency ownership);
- Creating compliance risks;
- Failing to interact with compliance team members;
- Failing to participate in client audits;
- Making inappropriate comments at work;
- Making business decisions without consultation of Firm leadership;
- Sharing confidential information outside of the Firm;
- Failing to produce work product;
- Refusing to participate in key aspects of the Firm business;
- Failing to take a leadership role; and
- Creating a toxic, hostile, and/or discriminatory environment for co-workers.

31. Gibbs' conduct contributed to or resulted in the departure of multiple attorneys in the practice citing his lack of leadership, lack of growth in subject matter expertise, and poor communication skills as the reason for their untimely departure.

32. Gibbs demonstrated a pattern of exclusionary behavior and lobbed demeaning remarks to colleagues that is not consistent with the culture of the Firm.

33. When confronted with constructive criticism by Manley and/or other senior leaders, Gibbs responded with anger and demonstrated a lack of self-awareness.

34. On August 1, 2025, The Manley Firm placed Gibbs on administrative leave pending an investigation into allegations against Gibbs including discriminatory behavior, breach of fiduciary duty, and dereliction of duties.

35. With no employment agreement pertaining to Gibbs, on September 12, 2025, MDK terminated its employment of Gibbs and disabled his access to information systems to protect the Firm (the "Termination Letter").  A copy of the Termination Letter is attached as **Exhibit 3**.

36. Despite written request for the return of company property, namely, phone and computer, Gibbs has refused to relinquish same.

37. On September 24, 2025, The Manley Firm, via a letter from counsel, sought an amicable separation of Gibbs from the Firm. The letter from The Manley Firm's counsel stated that the Firm would take action to expel Gibbs if they could not reach an amicable resolution.

38. On September 26, 2025, in response to the Firm's request to separate, Gibbs attempted to exercise his option under the UPOA to acquire an additional 20% interest in The Manley firm.

39. On October 1, 2026, Theodore Manley, as the only other Member of The Manley Firm, took action to expel Gibbs from the Firm (the "Expulsion Action"). A copy of the Expulsion Action is attached as **Exhibit 4**.

40. The Expulsion Action expelled Gibbs for cause on the basis of Gibbs' breaches of the confidentiality provisions of the Operating Agreement.

**C.     Gibbs improperly filed suit in Florida.**

41.    On October 1, 2026, Gibbs filed a complaint against Theodore Manley, The Manley Firm, and MDK in Tampa, Florida challenging his termination from MDK and seeking to enforce his option to purchase shares in The Manley Firm under the UPOA.

42.    Gibbs' Florida action blatantly disregards the mandatory forum selection clause found in the Operating Agreement and, upon information and belief, was filed to harass and improperly manufacture attorney's fees and costs.

## FIRST CLAIM FOR RELIEF
### Declaratory Judgment

43.    Plaintiffs incorporate by reference as though fully rewritten herein all allegations contained in paragraphs 1-42 of the Complaint.

44.    A controversy has arisen between The Manley Law Firm and Gibbs as to Gibbs' expulsion from the Firm through the Expulsion Action.

45.    Section 9.7 the terms of the Operating Agreement, provides the requirements for expulsion of a Member:

> 9.7 <u>Death, Disability, Bankruptcy, Retirement and Expulsion</u>.
> (e) Expulsion. Any Member (an "Expelled Member") may be expelled immediately for cause upon the affirmative vote of all of the other Members (with the Expelled Member having no right to vote thereon) at a duly constituted meeting of the Members specifically noticed for this purpose, that any of the following reasons for expulsion exist:
> [***]
> Professional misconduct or any material violation of the canons of professional ethics, if such misconduct or violation continues without correction and cure for a period of thirty (30) days following written notice from the Company and/or the other Member describing in reasonable detail such misconduct or violation and the steps necessary to correct or cure such misconduct or violation
> [***]
> The Expelled Member's material breach of this Agreement, which breach remains uncured for a period of thirty (30) days following written notice from the Company or the other Member, describing in reasonable detail such breach and the steps necessary to cure such breach (or such longer period of time not to exceed sixty

(60) days following such written notice if such breach cannot be reasonably cured within such 30-day period).

(Ex. 1, § 9.7.)

46. The Operating Agreement contains a provision which mandates that Members keep confidential firm information confidential:

6.11 <u>Confidentiality</u>.

(a) Each Member acknowledges that it may have access to and become acquainted with trade secrets, proprietary information, and confidential information belonging to the Company and its affiliates that are not generally known to the public, including information concerning business plans, financial statements, and other information provided pursuant to this Agreement, operating practices and methods, expansion plans, strategic plans, marketing plans, contracts, customer lists, or other business documents that the Company or other affiliate treats as confidential, in any format whatsoever (including oral, written, electronic, or any other form or medium) (collectively, "Confidential Information"). In addition, each Member acknowledges that: (i) the Company and its affiliates have invested, and continue to invest, substantial time, expense, and specialized knowledge in developing their Confidential Information; (ii) the Confidential Information provides the Company and its affiliates with a competitive advantage over others in the marketplace; and (iii) **the Company and its affiliates would be irreparably harmed if the Confidential Information were disclosed to competitors or made available to the public**. Without limiting the applicability of any other agreement to which any Member is subject, **no Member shall, directly or indirectly, disclose or use (other than in connection with the conduct of the Company's business or the monitoring of its investment in the Company) at any time, including use for personal, commercial, or proprietary advantage or profit, either during its association with the Company or thereafter, any Confidential Information of which such Member is or becomes aware. Each Member in possession of Confidential Information shall take all appropriate steps to safeguard such information and to protect it against disclosure, misuse, espionage, loss, and theft**.

(Ex. 1, § 6.11 (emphasis added).)

47. This section of the Operating Agreement also recognizes that irreparable harm occurs from disclosure of confidential information (Ex. 1, § 6.11.)

48. The Expulsion Action provides that Gibbs was expelled due to "breaches of the confidentiality obligations of the Members, a breach which cannot be cured." (Ex. 4.)

8

49. Gibbs shared confidential Firm data outside of the Firm in violation of Section 6.11 of the Operating Agreement.

50. Accordingly, The Manley Firm expelled Gibbs as a Member of the Firm.

51. The Manley Firm seeks a declaration that Gibbs is no longer a Member of the Firm.

52. The Manley Firm seeks a declaration that it did not breach any obligations to Gibbs under the Operating Agreement in connection with the Expulsion Action.

53. The Manley Law Firm seeks a declaration that it did not breach any duties owed to Gibbs in connection with the Expulsion Action.

54. Such a declaration will conclusively establish the rights and legal relations of the parties and is proper, pursuant to 28 U.S.C. § 2201.

## SECOND CLAIM FOR RELIEF
**Declaratory Judgment**

55. Plaintiffs incorporate by reference as though fully rewritten herein all allegations contained in paragraph 1-54 of the Complaint.

56. A controversy has arisen between The Manley Law Firm and Gibbs as to Gibbs' expulsion from the Firm through the Expulsion Action.

57. The Operating Agreement sets forth a process by which a Member's interests are valued and repurchased after expulsion:

> 9.7 **Death, Disability, Bankruptcy, Retirement and Expulsion**. Upon the occurrence of a Triggering Event described in clauses (a), (b), and (d) of the definition of Triggering Event with respect to a Withdrawing Member (a "Mandatory Buy-Out Event"), the Company shall redeem or the remaining Member (the "Purchasing Member") shall purchase, all, but not less than all, of the Membership Interest held by or for the benefit of (i) the Withdrawing Member and any Transferee of the Withdrawing Member, and (ii) the personal representative of the estate of the Withdrawing Member, if applicable (collectively the "Purchased Membership Interest"). [***] The purchase price to be paid by the Company or the Purchasing Member, as the case may be, for such Purchased Membership Interest shall be the applicable Buyout Price determined pursuant to Section 9.7(b). Upon

>the occurrence of a Mandatory Buy-Out Event or issuance of a Call Notice (as applicable), a purchase and sale agreement or a redemption agreement, as the case may be, shall be deemed to have been created between the Company or the Purchasing Member, as the case may be, as purchaser, and each holder of the Purchased Membership Interest, as seller, providing for the purchase and sale or the redemption of the Purchased Membership Interest pursuant to this Section 9.7.
>
>(a) **Triggering Event**. For purposes of this Agreement, "Triggering Event" means, with respect to any Member, the first to occur of (a) the death of such Member, (b) the Disability of such Member, (c) the Bankruptcy of such Member, or (d) the expulsion of such Member pursuant to Section 9.7(e) hereof. The Member with respect to whom a Triggering Event occurs is sometimes referred to herein as a "Withdrawing Member." Upon the occurrence of a Triggering Event, the Company shall continue without dissolution, and the Withdrawing Member shall cease to be a Member and shall have no further right to participate in the Company business, profits, losses, or distributions, but shall have only the rights provided in this Section 9.7.
>
>[***]
>
>(b) **Buy-Out Price**. For purposes of this Agreement, the "Buyout Price" of a Withdrawing Member's Membership Interest shall be an amount equal to (1) if the Triggering Event is Mandatory Buy-Out Event, the Adjusted Appraised Value of such Membership Interest as of the date of the Triggering Event, less any Company distributions to the Withdrawing Member after such day; or (2) if the Triggering Event is a Call Event, an amount equal to seventy-five percent (75%) of the Adjusted Appraised Value of such Membership Interest as of the date of the Triggering Event, less any Company distributions to the Withdrawing Member after such date, and less any actual damages and costs incurred by the Company as a result of the Call Event. The certified public accounting firm regularly employed by the Company shall give notice of the Buy-Out Price to the Company and the Withdrawing Member as soon as reasonably possible after its determination has been made. The Buy-Out Price as so determined shall be final and binding on the Company, the Purchasing Member, the Withdrawing Member, and any other holders of the Purchased Membership Interest.

(Ex. 1, § 9.7.)

58. The Manley Firm seeks a declaration that Section 9.7 of the Operating Agreement has been triggered by the Expulsion Action.

59. The Manley Firm seeks a declaration that The Manley Firm shall redeem Gibbs' shares in the Firm according to the procedures set forth in Section 9.7 of the Operating Agreement.

10

60. Such a declaration will conclusively establish the rights and legal relations of the parties and is proper, pursuant to 28 U.S.C. § 2201.

### THIRD CLAIM FOR RELIEF
**Declaratory Judgment**

61. Plaintiffs incorporate by reference as though fully rewritten herein all allegations contained in paragraphs 1-60 of the Complaint.

62. A controversy has arisen between MDK and Gibbs as to Gibbs' termination from MDK through the Termination Letter.

63. At all relevant times, Gibbs was an employee at will with MDK.

64. Following an investigation that concluded that Gibbs had made discriminatory remarks, had breached confidentiality duties to the Firm, and had failed to perform his job duties, and the numerous other performance issues referenced herein, MDK terminated Gibbs' employment.

65. MDK seeks a declaration that Gibbs is no longer an employee of MDK.

66. MDK seeks a declaration that it did not breach any obligations to Gibbs in connection with the Termination Letter.

67. MDK seeks a declaration that it did not breach any duties owed to Gibbs in connection with the Termination Letter.

68. Such a declaration will conclusively establish the rights and legal relations of the parties and is proper, pursuant to 28 U.S.C. § 2201.

WHEREFORE, Plaintiffs The Manley Law Firm, LLC and MDK Management Company, Inc. demand judgment against Defendant Brent Gibbs, as follows:

(i) For a declaration that (1) Gibbs is no longer a Member of the Firm; (2) The Manley Firm did not breach any obligations to Gibbs under the Operating Agreement in connection with the Expulsion Action; and (3) The Manley Law Firm did not breach any duties owed to Gibbs in connection with the Expulsion Action.

(ii)  For a declaration that (1) Section 9.7 of the Operating Agreement has been triggered by the Expulsion Action; and (2) The Manley Firm shall redeem Gibbs' shares in the Firm according to the procedures set forth in Section 9.7 of the Operating Agreement.

(iii)  For a declaration that: (1) Gibbs is no longer an employee of MDK; (2) MDK did not breach any obligations to Gibbs in connection with the Termination Letter; (3) MDK did not breach any duties owed to Gibbs in connection with the Termination Letter.

(iv)  A "speedy hearing" on this Declaratory Judgment Action pursuant to Rule 57 of the Federal Rules of Civil Procedure;

(v)  For Plaintiffs' attorneys' fees and costs;

(vi)  For prejudgment and post-judgment interest; and

(vii)  For such further relief as the Court may deem proper.

Respectfully submitted,

*/s/ A.J. Hensel*
A.J. Hensel (0085340)
Erica Arras (0101139)
ICE MILLER LLP
250 West Street, Suite 700
Columbus, Ohio 43215
(614) 462-1103
aj.hensel@icemiller.com
erica.arras@icemiller.com

*Attorney for Plaintiffs The Manley Law Firm, LLC and MDK Management Company, Inc.*